## E. J. STOIKE v. A. B. WESEMAN AND ANOTHER.[1]

May 7, 1926.

No. 25,296.

**Licensed osteopath may practice obstetrics.**

    A duly licensed osteopathic physician is authorized to practice obstetrics in this state by virtue of the provisions of G. S. 1923, §§ 5736, 5737.

    Midwifery, 40 C. J. p. 657 n. 25.
    Obstetrics, 29 Cyc. p. 1324 n. 4 New.
    Physicians and Surgeons, 30 Cyc. p. 1562 n. 35.

Action by an osteopathic physician to recover for professional services. The defendants appeal from an order of the district court for Mower county, Peterson, J., sustaining a demurrer to the amended answer. Affirmed.

*Baudler Brothers*, for appellants.

*E. N. Hoffman* and *Paul T. Stevens*, for respondent.

LEES, C.

The complaint alleges that plaintiff is an osteopathic physician, licensed to practice in Minnesota; that the defendants are husband and wife, and that plaintiff was employed to attend the wife in childbirth; that he performed the services he was employed to render, and that defendants refused to pay him anything therefor. The answer admitted these allegations and set up as a defense that plaintiff was not an authorized medical practitioner and had no license to practice midwifery, and that the services he rendered were not performed in an emergency. A demurrer to the answer was sustained and defendants appealed.

The question to be determined is whether our statutes permit a licensed osteopathic physician to attend a woman in childbirth.

In 1891 the legislature enacted a statute regulating the practice of midwifery. L. 1891, p. 109, c. 30. It declared that any person

[1]Reported in 208 N. W. 993.

who for a fee shall attend a woman in childbirth shall be regarded as practicing midwifery and shall obtain a license from the state board of medical examiners before engaging in the practice; and that the act shall not apply to physicians and surgeons duly licensed to practice.

By L. 1903, p. 669, c. 369, the practice of osteopathy was regulated. This act created a state board of examiners in osteopathy and required persons desiring to practice as osteopathic physicians to obtain a license. To obtain it the applicant was required to-exhibit a diploma issued by a regular school of osteopathy wherein the curriculum included instruction in certain subjects, one of which was obstetrics, and to pass an examination in that subject as well as in many others.

By an amendment to G. S. 1913, § 4994, now G. S. 1923, § 5736, which was enacted after plaintiff performed the services for which he sues, osteopathic physicians are required to perform the same duties as other physicians with reference to matters pertaining to public health and reports of births and deaths. The amendment casts some light on the legislative understanding of the acts theretofore in force for, unless an osteopathic physician could lawfully attend a woman in childbirth, there would be no reason for requiring him to report the birth of the child. But of course the amendment had no direct application to this case, which arose before it was enacted.

Defendants quote numerous definitions of the words "midwifery" and "obstetrics." According to these definitions midwifery is practical obstetrics; and obstetrics is the branch of medical science which has to do with the care of women during pregnancy and parturition. Following these definitions, the argument proceeds as follows:

"Midwifery or obstetrics is a part of the medical science; and as Sec. 4994, G. S. 1913 provides 'The practice of osteopathy is hereby declared distinct from that of medicine or surgery within the meaning of the law.' It follows that the practice of osteopathy is distinct from the practice of midwifery or obstetrics. Therefore the respondent did not have, in 1922, authority to practice midwifery under his license to practice osteopathy."

To fortify the argument, State v. Taylor, 106 Minn. 218, 118 N. W. 1012, 19 L. R. A. (N. S.) 877, 16 Ann. Cas. 487, is cited. It was there held that a licensed physician could not practice dentistry without securing a license as a dentist. The facts were that the defendant, a licensed physician, extracted two teeth for a patient, took an impression of his mouth and sent it to a dental laboratory where artificial teeth were made to take the place of those extracted. The physician delivered them to his patient and received a fee from him. The statute in force at the time, L. 1907, p. 128, c. 117, § 2, provided that a person who, for a fee, replaced lost teeth by artificial ones should be considered as practicing dentistry. Under these circumstances, the court said:

"In the absence of any legislative declaration to the contrary, a certificate authorizing the holder to practice medicine and surgery would therefore entitle him to practice dentistry. But for reasons of public policy, with which we have no particular concern, the legislature adopted the policy of dividing the field of medicine and surgery, and making a separate profession of a part thereof."

The case is clearly distinguishable from the one at bar. The statute which declared that a person who attended a woman in childbirth should be regarded as practicing midwifery was followed some 12 years later by the statute regulating the practice of osteopathy. The later statute, as we read it, evinced an intention on the part of the legislature to permit duly licensed osteopathic physicians to practice obstetrics. · The provisions of the earlier statute in that particular were abrogated. L. 1903, p. 673, c. 369, § 7, repeals all acts and parts of acts in conflict with the provisions of said chapter. Manifestly there would be little or no reason for the statutory requirement that an applicant for a license to practice osteopathy should have had a course of instruction in obstetrics and should pass a satisfactory examination in that subject if he was not permitted to attend women in childbirth by virtue of his license as an osteopathic physician. If the legislature had intended to prohibit him from practicing obstetrics, it is fair to assume that it would have said so in plain language, just as it did when it provided that a

license issued under the act of 1903 should not authorize the holder to prescribe drugs for internal use or perform major surgical operations.

We attach little importance to the form in which the midwifery and osteopathic acts were carried into the Revised Statutes of 1905. We have repeatedly held in effect that the revision was largely in the nature of a rearrangement and clarification of the existing body of statutory law and not new legislation covering the entire field occupied by previously enacted statutes.

Order affirmed.