STATE, EX REL. WALTER R. JOHNSON, ATTORNEY GENERAL, APPELLANT, V. WILLIAM G. WAGNER ET AL., APPELLEES.

297 N. W. 906

FILED MAY 2, 1941. No. 30980.

*Walter R. Johnson, Attorney General, Don Kelley* and
*Rush C. Clarke,* for appellant.

*Beeler, Crosby & Baskins* and *Mothersead & York, contra.*

Heard before ROSE, PAINE, CARTER, MESSMORE and YEAGER, JJ., and CHAPPELL, District Judge.

CARTER, J.

This is a suit brought by the attorney general to enjoin the defendant, Roy Jackson Gable, an osteopathic physician, from engaging in the practice of medicine and operative surgery within this state and from publicly professing to be a physician, surgeon, or obstetrician. The defendant filed an answer in which he denied that he had ever engaged in the practice of medicine, or professed publicly any right to do so. He alleges, however, that he is an osteopathic physician, surgeon and obstetrician and asserts a right to engage in the practice of operative surgery and obstetrics and to hold himself out to the public as one qualified to do so. The attorney general thereupon moved for a judgment on the pleadings, which was overruled by the trial court, and a judgment entered in favor of the defendant. The state thereupon appealed.

The question whether the defendant may lawfully engage in the practice and dispensing of medicine is not an issue on this appeal. Whether defendant may lawfully engage in the practice of operative surgery and obstetrics and engage in the use of anesthetics in the manner alleged in defendant's answer are the questions presented by the motion for judgment on the pleadings. The correctness of the trial court's ruling on this motion is the controlling factor in this appeal.

The defendant alleges that he is a graduate of the American School of Osteopathy at Kirksville, Missouri, a school of osteopathy recognized by the American Osteopathic Association. On June 13, 1922, defendant was issued a license to practice as an osteopathic physician and surgeon by the department of public welfare of the state of Nebraska. The answer admits and alleges that defendant has performed surgical operations, including tonsillectomies, appendectomies, circumcisions, an amputation of a toe, rectal

operations, hysterectomies, operations for hooded clitoris and laparotomies, all of such operations being performed with instruments and by incisions of the patients' bodies; that he has engaged in the practice of obstetrics and has used anesthetics; all of which the defendant alleges that he will continue to do under claim of right.

It cannot be questioned that a person engaging in the practice of medicine and surgery without the required statutory license may be restrained by injunction. Comp. St. 1929, sec. 71-801. If, therefore, the admissions and allegations of defendant's answer constitute the practice of medicine and surgery as defined by section 71-1401, Comp. St. 1929, the defendant should be enjoined from so doing. If said acts are within the scope of the practice of osteopathy as defined by our statutes on the subject, the defendant is then within his rights and not subject to restraint for so doing.

The question is raised whether the character and general duties of occupations classed as professions are determined as questions of law or fact. We think the rule is that they are questions of fact of which the courts will take judicial notice. Certainly, the question whether a specific act constitutes the practice of osteopathy is not subject to proof by expert witnesses. The absurdities which would be certain to follow such a construction of the rule in question are too obvious to require an exposition here. The general rule of pleading, which admits as true all facts well pleaded upon the filing of a general demurrer or a motion for a judgment on the pleadings, has no application to facts of which a court may take judicial notice, and such demurrer or motion does not therefore admit a conclusion of law deduced from such facts.

The general rule seems to be: "There is apparently no dissent from the proposition that in the consideration of a pleading the courts must read the same as if it contained a statement of all matters of which they are required to take judicial notice, even when the pleading contains an express allegation to the contrary." *Chavez v. Times-Mirror*

*Co.*, 185 Cal. 20, 195 Pac. 666. See, also, *Livermore v. Beal*, 18 Cal. App. (2d) 535, 64 Pac. (2d) 987; *Verde River Irrigation & Power District v. Salt River Valley Water Users Ass'n*, 94 Fed. (2d) 936; *Hinds v. Federal Land Bank of New Orleans*, 235 Ala. 360, 179 So. 194; *Richter v. City of Lincoln*, 136 Neb. 289, 285 N. W. 593.

Applying this rule to the pleadings before us, the allegations of defendant's answer to the effect that the acts admitted constitute the practice of osteopathy are mere conclusions of law. The allegation of a sound conclusion of law is always treated as superfluous and the allegation of an unsound conclusion is entirely disregarded. It matters not in the instant case whether the conclusions pleaded are true or not, for that which is judicially known may not be successfully controverted by pleadings, or made issuable by them. *National Supply Co. v. Chicago & N. W. R. Co.*, 108 Neb. 326, 187 N. W. 917; *State v. Rolio*, 71 Utah, 91, 262 Pac. 987.

This court is therefore required to determine the meaning of the term "osteopathy" in the same manner as any other fact of which it is required to take judicial notice. It may resort to the definition and description of it given by the founder of the practice, by those who teach and practice it, and by the lexicographers who define it as a science. *State v. Bonham*, 93 Wash. 489, 161 Pac. 377.

Much has been written by the founder of osteopathy, and others learned in the practice of its profession, as to the fundamentals of the science of osteopathy. To give a resumé of these writings would unduly lengthen this opinion. We think a fair conclusion to be drawn from all of them was ably expressed in *Bragg v. State*, 134 Ala. 165, 32 So. 767, where the supreme court of Alabama said: "The method of treatment by the practitioners of osteopathy is a system of manipulation of the limbs and body of the patient with the hands, by kneading, rubbing or pressing upon the parts of the body. In the treatment, no drug, medicine or other substance is administered or applied, either internally or externally; nor is the knife used or any form of surgery

resorted to in the treatment. The practitioner himself performs the manipulations. The teaching and theory of those skilled in osteopathy are, that it is a system of treatment of disease by adjustment of all the parts of the body mechanically. It is taught that any minute or gross derangement of bony parts; contracting and hardening of muscles or other tissues; or other mechanical derangements of the anatomical parts of the body which must be in perfect order mechanically, in order that it may perform its function aright, nerve centers, arteries, veins and lymphatics, which must function properly in order that health may be maintained. It is taught that such interferences lend to congestion, obstructed circulation of blood and lymph, irritation of nerves and abnormal state of nerve centers; that the result is disease which can be cured only by righting what is mechanically wrong. * * * The essential things taught in the schools of osteopathy are anatomy, physiology, hygiene, histology, pathology and the treatment of diseases by manipulation. The repudiation of drugs and medicine in the treatment of diseases is a basic principle of osteopathy and a knowledge of drugs or medicines, their administration for the cure of diseases, the writing and giving of prescriptions, are not essential to the graduation of, and the issuance of diplomas to, students of osteopathy."

The well-settled definitions of osteopathy, in the writings of Dr. Andrew Taylor Still, its founder, and in the writings of recognized practitioners, as well as in the dictionaries and the decisions of the courts, all uniformly hold that the system of osteopathy administers no drugs and uses no knife. See *Nelson v. State Board of Health,* 108 Ky. 769, 57 S. W. 501; *State Board of Medical Examiners v. Baudendistel,* 6 N. J. Misc. 249, 140 Atl. 886; *Harlan v. Alderson,* 55 Cal. App. 263, 203 Pac. 1014. With these definitions and observations in mind, the licensing statutes must be examined to determine the extent to which this definition has been modified in this state by legislative action. Section 71-1701, Comp. St. 1929, provides: "For the purpose of this article the following classes of persons shall be deemed

to be engaged in the practice of osteopathy: 1. Persons publicly professing to be osteopaths or publicly professing to assume the duties incident to the practice of osteopathy. 2. Persons who treat human ailments by that system of the healing art which places the chief emphasis on the structural integrity of the body mechanism as being the most important factor for maining (maintaining) the organism in health." Section 71-1702, Comp. St. 1929, sets out certain exceptions which are not relevant in this suit.

Provisions are then made for the examination and licensing of those who would practice osteopathy. Among the requirements is the presentation of proof that the applicant was graduated from an accredited school or college of osteopathy. Comp. St. 1929, sec. 71-1703. The following section defines an accredited school of osteopathy. Among the conditions required is that the course of study must include the following subjects: Anatomy; chemistry; pathology; toxicology; pediatrics; general surgery; obstetrics; histology; physiology; hygiene; dietetics; practice, therapeutics, general diagnosis and technique; dermatology and syphilis; orthopedic surgery; gynecology; embryology; bacteriology; comparative therapeutics; nervous and mental diseases; jurisprudence, ethics and economics; genitourinary diseases; and eye, ear, nose and throat. Comp. St. 1929, sec. 71-1704. The section following this provides: "Every license issued under this division shall confer upon the holder thereof the right to practice osteopathy in all its branches, as taught in the osteopathic colleges recognized by the American Osteopathic Association." Comp. St. 1929, sec. 71-1705.

The argument is made that as general surgery, orthopedic surgery, anatomy, pathology and other subjects are included in the required course of study in an accredited school of osteopathy, their practice is included in the statutory authorization by virtue of the use of the words "The right to practice osteopathy in all its branches, as taught in the osteopathic colleges recognized by the American Osteopathic Association." The words of this statute

do not authorize a licensed osteopath to practice everything that he is taught in an osteopathic school. It contains expressions which have a limiting as well as an authorizing effect. The practice authorized must be osteopathic and it must also be as taught in accredited osteopathic colleges. The fact that branches of medicine and surgery may be taught to increase the knowledge of the student in the anatomy and functions of the various parts of the human body for the purpose of better fitting him to practice osteopathy will not warrant him to invade those fields on the theory that they constitute the practice of osteopathy. The scope of osteopathy is well known and schools and colleges of osteopathy must stay within its boundaries,—they cannot enlarge them. *People v. Fowler*, 32 Cal. App. (2d) Supp. 737, 84 Pac. (2d) 326. In a case similar in principle, the supreme court of California said: "While the section contains the additional clause 'as taught in chiropractic schools or colleges,' the entire section must be taken as a whole and it cannot be taken as authorizing a license to do anything and everything that might be taught in such a school. A short course in surgery or one in law might be given, incidentally, and it would not follow that the section would then authorize a licensed chiropractor to engage in such other professions. It is not sufficient that a particular practice is taught in such a school. Under the terms of the statute it must meet the further test that it is a part of chiropractic, whatever that philosophy or method may be, and further that it shall not violate the provision which expressly forbids the practice of medicine. If such a practice is not a part of chiropractic but does constitute the practice of medicine, it is not authorized under this license even though it may be taught in such a school." *In re Hartman*, 10 Cal. App. (2d) 213, 51 Pac. (2d) 1104.

This point is well summed up in *Georgia Ass'n of Osteopathic Physicians and Surgeons v. Allen*, 31 Fed. Supp. 206, wherein the court said: "His knowledge must be broader than his practice; he must know what he practices but may not practice all he knows."

The argument is advanced that the use of the words "osteopathic physician and surgeon" in the license implies the right to practice surgery. The word "surgery" used in its general sense in connection with the profession of osteopathy means surgery by manual manipulation and was never meant to include operative surgery as we now understand it. The correctness of this statement is evidenced by the very principles of osteopathy to the effect that the general use of a knife or other instruments in surgical operations was regarded as unnecessary and opposed to the osteopathic system of treatment. The practice of osteopathy and operative surgery has long been recognized as two separate and distinct things. Separate boards have been set up in this state for the examination of those applying for licenses to practice medicine and surgery and those desiring to practice osteopathy. It is urged that the principles of osteopathy have changed and that experience and learning have produced certain advances that must be recognized. If osteopathy has changed merely by a self-serving attempt to broaden its scope by invading fields requiring a different license, we can only say that the legislature has never recognized any such additions to the profession. If the changes are the result of advancements in the profession, of course, they still constitute the practice of osteopathy. But the practice of operative surgery by an osteopath is an invasion of the field of the physician and surgeon as it is generally known and is not an evolutionary advancement of the profession of osteopathy. *State v. Gleason,* 148 Kan. 1, 79 Pac. (2d) 911; *Burke v. Kansas State Osteopathic Ass'n,* 111 Fed. (2d) 250.

Respondent argues that, as the act of 1919 (Comp. St. 1922, sec. 8174) contained the provision that "osteopathic physicians shall perform only such operations in surgery as was fully taught in the school or college of which the applicant is a graduate at the time of his attendance," it thereby recognizes operative surgery as a branch of osteopathy. This contention is too broad. Much of the difficulty in this class of cases has arisen because of the varied

use of the term "surgery." It originated from the latin "chirurgia," meaning "hand work" or, as another writer puts it, "to work with the hand." See American Illustrated Medical Dictionary (16th ed.) ; *State v. Gleason*, 148 Kan. 1, 79 Pac. (2d) 911. This is the meaning attributed to it in all the earlier writings on the subject of osteopathy and accounts for the general usage of the word in designating an osteopath as an osteopathic physician and surgeon. The invasion of the field of medicine and operative surgery as it is generally understood seems to be based on an attempt to broaden the definition of the term "surgery" as formerly used so as to include operative surgery. The field cannot be so extended. The words in the 1919 act must therefore be construed as referring to operations in surgery consistent with the practice of osteopathy as originally defined, which excludes the practice of operative surgery in its commonly accepted meaning.

We conclude therefore that an osteopathic physician and surgeon is not authorized under the statutes of Nebraska to engage in the practice of operative surgery and that the trial court was in error in holding to the contrary.

Relator contends that respondent cannot engage in the practice of obstetrics without a license to practice medicine and surgery as defined by section 71-1401, Comp. St. 1929. That a practicing physician and surgeon, properly licensed under the statute, may engage in the practice of obstetrics is not disputed. The right to practice obstetrics is not specifically granted by the statute authorizing the licensing of osteopathic physicians and surgeons. It is not disputed that respondent graduated from an accredited school of osteopathy, the requirements of which include the study of obstetrics. In the respects noted, respondent is in no better position than he was as to his right to practice operative surgery. But we are again required to examine the statutes to determine to what extent, if any, they have modified this position. Under the provisions of the 1901 act, an osteopath was required to report to the proper authorities all cases of contagious diseases, deaths

or births. Comp. St. 1901, sec. 3702h. This same provision appears in the act of 1905. Comp. St. 1905, sec. 4340. In 1909 a new statute was enacted which provided that osteopathic physicians shall report all births the same as physicians of schools of medicine. Comp. St. 1909, sec. 4336. This provision was retained in the act of 1919. Comp. St. 1922, sec. 8176. In 1927 this section was amended to read as follows: "A birth certificate in the form prescribed by the department of public welfare, and conforming to all of the requirements of the United States census bureau shall be filled out by the physician in attendance, and signed in his own handwriting. If there is no physician in attendance, then said certificate shall be completed and signed by the parent or other person present. Such certificate shall be filed with the local registrar within five days after any birth." Comp. St. 1929, sec. 71-2404.

It will be noted that the present law does not specifically require an osteopath to file birth certificates with the de-. partment of public welfare, the requirement being that the birth certificate shall be filled out by the physician in attendance.

To obtain a license to practice osteopathy, respondent was required to exhibit a diploma issued by a regular school of osteopathy wherein the curriculum included instruction in certain subjects required by statute, one of which was obstetrics. He was also required to pass an examination in the required subjects. While these facts alone would not authorize respondent to engage in the practice of obstetrics, yet, when considered with the statute regarding the reporting of childbirths, together with the history of its development, we think the legislature authorized respondent, upon securing a license to practice osteopathy, to engage in the practice of obstetrics. As was said in *Stoike v. Weseman*, 167 Minn. 266, 208 N. W. 993: "Unless an osteopathic physician could lawfully attend a woman in childbirth, there would be no reason for requiring him to report the birth of the child." Of course, the present statute does not specifically require an osteopath to report

births, but the former statute did, and we do not think the enactment of the present law evidences any intent to limit the practice of the osteopath in the field of obstetrics from that which had theretofore existed. It is a fundamental principle of statutory construction that the legislature must be presumed to have had in mind all previous legislation upon the subject, so that in the construction of a statute we must consider the preexisting law and any other acts relating to the same subject. We therefore reach the conclusion that the legislature has recognized obstetrics as a branch of osteopathy, a conclusion which the court is obliged to follow until the legislature by specific action evidences a contrary view. We are therefore of the opinion, after an examination of the legislative history of the laws pertaining to osteopathy and their relation to obstetrics and regulatory requirements as to reporting childbirths, that the legislature has authorized a licensed practitioner of osteopathy to engage in the practice of obstetrics, and that the use of the word "physician" in section 71-2404, Comp. St. 1929, was intended to include regularly licensed osteopathic physicians.

The attorney general contends that defendant is not authorized to use anesthetics in his practice as an osteopath. The 1919 act of the legislature (Comp. St. 1922, sec. 8174) provided in part as follows: "Nothing in this act shall be construed so as to authorize the administration, by an osteopath, of drugs excepting anesthetics, antiseptics, antidotes for poisons and narcotics for temporary relief of suffering." This clearly shows that the legislature intended the use of anesthetics to be included in and authorized by the license to practice osteopathy. In 1927 a new statute was enacted which read as follows: "Every license issued under this division shall confer upon the holder thereof the right to practice osteopathy in all its branches, as taught in the osteopathic colleges recognized by the American Osteopathic Association." Comp. St. 1929, sec. 71-1705. We do not think the passage of the 1927 act manifests any legislative intent to deprive the defendant

of his previously acquired privilege to use anesthetics, antiseptics, antidotes for poisons, and narcotics for temporary relief of suffering. We are inclined to the view that when a legislative act grants a privilege, as was done in the case at bar, a subsequent enactment will not be construed to deprive a beneficiary of the privilege conferred unless a legislative intent to so do is clearly apparent from the legislation itself. For these reasons, we hold that the defendant, under the statutes as they now exist, is entitled to use anesthetics by virtue of his license to practice osteopathy.

The trial court erred in not granting an injunction enjoining the defendant Gable from engaging in the practice of operative surgery and from publicly holding himself out as licensed and otherwise qualified to perform operative surgery with surgical instruments. In all other respects the judgment of the trial court is correct.

AFFIRMED IN PART AND REVERSED IN PART.