Nos. 35,230, 35,252

THE STATE OF KANSAS, ex rel. O. M. WHEAT, County Attorney,
*Appellee*, v. C. V. MOORE, *Appellant*.

THE STATE OF KANSAS, ex rel. RAYMOND L. COBEAN, County
Attorney, *Appellee*, v. O. R. MUECKE, *Appellant*.

(117 P. 2d 598)

Opinion filed October 11, 1941.

*E. H. Hatcher*, of Topeka, for the appellants.

*O. M. Wheat, Milburn Geist*, county attorneys, and *Theo. F. Varner*, of In-
dependence, for the appellee.

The opinion of the court was delivered by

ALLEN, J.: As authorized by G. S. 1939 Supp. 65-1010, the ac-
tions were brought to oust the defendants from the unlawful practice
of medicine and surgery. The appeal in the Moore case No. 35,230

is from Barber county; in the Muecke case No. 35,252 is from Pratt county. The issues raised are similar and the cases were argued together at the bar of this court. It will be convenient to dispose of both cases in one opinion.

The petition in the Moore case, No. 35,230, alleged:

"3. That the defendant, C. V. Moore, has never been and is not now licensed by the Board of Medical Registration and Examination of the state of Kansas, and the defendant is wholly without any right, power or privilege to engage in the practice of medicine and surgery in the state of Kansas. And particularly the defendant is without any right, power or authority to use drugs as remedial aids.

"4. That continuously for more than a year past the defendant, C. V. Moore, has usurped the right, power and authority to practice medicine and surgery. That the defendant, C. V. Moore, has on numerous occasions and at diverse times engaged in the unlawful practice of medicine and surgery in that he has prescribed and recommended, for a fee, drugs and medicines found in and comprising a part of materia medica, and that such drugs and medicines have been by the defendant prescribed and administered for the cure of bodily infirmities or diseases of other kinds and for a fee paid to this defendant. That the defendant has held himself out and represented himself to be lawfully engaged in the practice of medicine and surgery and has held himself out as authorized to treat the sick by means and through the use of drugs and medicines found in materia medica. That the defendant has treated medically and prescribed and dispensed medicines to a large number of persons whose names are to this relator unknown and for that reason not more particularly alleged.

"That unless ousted by an order of this court and enjoined from the further use of medicine and surgery and the use of medicine and drugs found in materia medica, the defendant, C. V. Moore, will continue to practice medicine and surgery within the county of Barber and state of Kansas without lawful right or authority and will continue to violate the laws of the state of Kansas by such practice."

Two specific instances are set out where drugs were prescribed by the defendant. It was alleged that unless ousted by an order of the court the defendant will continue to practice medicine and surgery contrary to the laws of Kansas.

As the appeal is from an order of the court striking certain portions of defendant's answer, we set forth pertinent portions of the answer, and have inserted brackets to indicate that part of the answer which was stricken:

"The defendant admits that he is not now and never has been licensed by the Kansas State Board of Medical Registration and Examination. The defendant admits that he did on the 25th day of November, 1939, prescribe for a Mrs. Dewey McKaeg, as set out in exhibit A attached to the petition, and that he did on the 25th day of October, 1939, prescribe for a Mrs. Leo House,

as set out in exhibit B attached to the petition [but defendant specifically denies that in doing so he was practicing medicine and surgery as that term is used in the medical practice act, and alleges that said prescriptions were given in connection with his practice as an osteopathic physician, and constituted a part of the practice of osteopathy as taught and practiced in legally incorporated colleges of osteopathy of good repute, all as he is authorized and licensed to do under the provisions of General Statutes of Kansas for 1935, 65-1201].

### "SECOND DEFENSE

"The defendant as a second full and complete defense to the cause of action attempted to be set out in the petition filed herein, alleges and states:

"1. That the defendant holds a certificate granting him the right to practice as an osteopathic physician duly issued by the Board of Osteopathic Examination and Registration, as provided by the 1935 General Statutes of the state of Kansas, 65-1201, and has been duly licensed to practice osteopathy since March 4, 1929, and is duly registered as an osteopathic physician.

["2. That the osteopathic practice act of the state of Kansas (Gen. Stat. 1935, 65-1201) grants to the defendant, as a duly licensed and registered osteopathic physician, the right to practice osteopathy in the state of Kansas as taught and practiced in the legally incorporated colleges of osteopathy of good repute.

"3. That osteopathy is recognized as a school of medicine based upon the theory that the normal body, when in correct adjustment, is a vital machine capable of making its own remedies against infections and other toxic conditions. The office of physicians of this school is to search for and when found, remove if possible, any peculiar condition in joints, tissues, diet or environment, which are factors in destroying the natural resistance, and provide symptomatic relief while a cure is being effected. The measures upon which he relies to effect this end, are physical, hygienic, medicinal and surgical, while relying chiefly on manipulation.

"4. The use of surgical instruments for operative treatment to remove unnatural growths and diseased or decayed parts of the body that cannot be rehabilitated, and the use of drugs and other medicinal agencies, is an important and necessary part of the practice of osteopathy, is taught and practiced in legally incorporated colleges of osteopathy of good repute as such, was an important part of the practice of osteopathy during the year 1913 and prior thereto, and was during the year 1913 and prior thereto, taught and practiced as an important and necessary part of osteopathy in legally incorporated colleges of osteopathy of good repute.

"The defendant, in his practice of the healing art, has not and does not desire to practice medicine and surgery, as that term is used in the medical practice act. The defendant has not practiced and will not practice anything other than osteopathy as osteopathy is taught and practiced in legally incorporated colleges of osteopathy of good repute."]

The appeal is from the order and judgment of the court in sustaining the motion of the plaintiff to strike from the answer that part of the answer enclosed in the brackets.

The petition in the Muecke case, No. 35,252, is similar in form to the petition in the Moore case, except that it sets up no specific instances of the prescription of drugs. The petition does charge, however, that the defendant Muecke performed a surgical operation for the removal of tonsils by the use of surgical instruments. Specific instances of that particular surgical operation are set forth. It was also charged that he used the title of "physician and surgeon" in connection with his name and represented that he was engaged in the practice of medicine and surgery.

The answer in the Muecke case was similar to the answer in the Moore case, and upon motion a corresponding portion of the answer was stricken. The appeal in the Muecke case is from the order of the court in sustaining the motion to strike such portion of defendant's answer.

The acts charged in the petition are admitted by defendants. In that part of the answers stricken, defendants allege that they hold certificates from the Board of Osteopathic Examination and Registration as provided by G. S. 1935, 65-1201, are duly licensed to practice osteopathy, and that doing and performing the acts charged did not constitute the practice of medicine and surgery within the medical practice act, but that such acts constituted the practice of osteopathy as taught and practiced in legally incorporated colleges of osteopathy of good repute as defendants were authorized and licensed to do under the statute.

Defendants assert the court erred in sustaining the motion to strike. Plaintiff asserts that the order sustaining the motion is not an appealable order, and contends the order of the court in sustaining the motion to strike was properly entered.

The questions now presented and the contentions now urged upon us received careful consideration by this court in our recent cases. *State, ex rel., v. Gleason,* 148 Kan. 1, 79 P. 2d 911 (see opinion on postdecision motions, same case, 148 Kan. 459, 83 P. 2d 425) ; *Gafney v. Wilson County Hospital,* 150 Kan. 945, 96 P. 2d 613. (Opinion on motions, same case, 152 Kan. 1, 102 P. 2d 893.)

The issues presented by the record before us are essentially the same as in the Gleason and Gafney cases. In substance we are asked to reconsider the above decisions. While the appeal might well be disposed of by a reference to our former decisions, we have examined with care the arguments urged upon us in the very able and candid brief of counsel for defendants.

In the Gleason case the applicable statutes were analyzed and our conclusions stated. Obviously we are not to enlarge this opinion by a mere repetition of the careful statements formulated in that case. We shall therefore summarize the views heretofore expressed in our various decisions, and supplement the same with such comment as may be called for in response to the points urged in the brief of defendants.

The solution of the questions presented lies in the true construction of our statutes. There is no dispute here. Nor can there be any dispute to the proposition that the construction of a statute is a function of the judiciary—that it is a question of law for the courts, not a question of fact for a jury. (59 C. J., Statutes, sec. 564, p. 944.)

In construing a statute the legislative intention is to be determined from a general consideration of the whole act. Effect must be given, if possible, to the entire statute and every part thereof. To this end it is the duty of the court, so far as practicable, to reconcile the different provisions so far as to make them consistent, harmonious and sensible. Thus, in *Judd v. Driver,* 1 Kan. 455, 464, it was said: "It is a uniform rule of construction that one part of a statute should be construed by other parts of the same statute so that, if possible, no clause or part shall be treated as superfluous, and especially when the two are parts of the same section." In *Bridge Company v. K. P. Rly. Co.,* 12 Kan. 409, 413, it was stated: "Another rule is, that a statute should be so construed that effect be given if possible to every clause and section of it." Again in *Gardenhire v. Mitchell,* 21 Kan. 83, 88, it was stated: "The statutes must be so construed as to harmonize their various provisions and, so far as possible, to give reasonable effect to all." (See, also, *State, ex rel., v. Mitchell,* 50 Kan. 289, 33 Pac. 104; *McCreedy v. City of Fort Scott,* 113 Kan. 753, 216 Pac. 287; *Barrett v. Duff,* 114 Kan. 220, 217 Pac. 918.)

It is also a well-settled rule that statutes *in pari materia* are to be construed together. (*Atchison & Eastern Bridge Co. v. Atchison County Comm'rs,* 150 Kan. 24, 91 P. 2d 34.)

The purpose of the legislature is not discovered by an examination of one sentence or one section, but by a comparison of the pertinent provisions of the various sections, and by construing them in the light of the purpose to be accomplished. (*Iola B. & L. Ass'n v. Allen County Comm'rs,* 152 Kan. 365, 103 P. 2d 788.)

What was the meaning of osteopathy under our statutes prior to

the act of 1913? That question came before this court in *State v. Johnson*, 84 Kan. 411, 114 Pac. 390. It was there stated:

". . . Osteopathy is carved out as a separate department, and registration and license are required, while its practitioners are prohibited from giving medicine and performing surgical operations—that is, from practicing medicine and surgery as distinguished from osteopathy. But medicine and surgery, which the appellee is charged with attempting to practice, by common use and adjudged meaning cover a wide portion of the domain of healing, and may and should be held to cover the case of one who, not claiming to be a physician or surgeon, really practices osteopathy under another guise without possessing the qualifications required of the osteopath. Osteopathy is defined as 'a system of treatment based on the theory that diseases are chiefly due to deranged mechanism of the bones, nerves, blood vessels, and other tissues, and can be remedied by manipulations of these parts.' (Webster's New International Dictionary.) It has been judicially defined as 'a method of treating diseases of the human body without the use of drugs, by means of manipulations applied to various nerve centers—chiefly those along the spine—with a view to inducing free circulation of the blood and lymph, and an equal distribution of the nerve forces. Special attention is given to the readjustment of any bones, muscles, or ligaments not in the normal position.' (6 Words & Ph., Jud. Def., p. 5070.) Medicine is defined as 'the science and art dealing with the prevention, cure, or alleviation of disease; in a narrower sense, that part of the science and art of restoring and preserving health which is the province of the physician as distinguished from the surgeon and obstetrician.' (Webster's New International Dictionary.) The same authority defines surgery as the 'art or practice of healing by manual operation; that branch of medical science which treats of mechanical or operative measures for healing diseases, deformities or injuries.'

·  ·   ·  ·  ·  ·  ·  ·  ·  ·  ·  ·  ·  ·  ·  ·

"The legislature has, by the statutes referred to, treated osteopathy as a separate department, and covered all the other branches of the healing art by the term medicine and surgery. As new schools of practice come into favor their followers must possess the requirements for the practice of medicine or surgery, or prevail upon the legislature to make separate provision for them as it has done for the osteopath." (pp. 416, 420.)

The general rule is that where a statute has been construed by the highest court having jurisdiction to pass on it, such construction is as much a part of the statute as if plainly written into it originally. (59 C. J., Statutes, sec. 613, p. 1036; Crawford, Statutory Construction, sec. 184, p. 308; 2 Lewis' Sutherland, Statutory Construction, sec. 485, p. 906.)

Thus by the statutes then in force and "by common use and adjudged meaning" osteopathy was defined and distinguished from the practice of medicine and surgery. It had a well known and clearly defined meaning.

Was the meaning of osteopathy as defined by the court enlarged or extended by the act of 1913? All statutes are presumed to be enacted with full knowledge of the existing condition of the law and with reference to it. (59 C. J., Statutes, sec. 616, p. 1038.) It is therefore a significant fact that the act of 1913 did not define or attempt to enlarge the narrow definition formulated in the Johnson cases decided two years previously. By every rule of construction it retained its original meaning.

In *State, ex rel., v. Eustace,* 117 Kan. 746, 233 Pac. 109, decided in 1925, the defendant contended he had the right to practice optometry under his certificate of registration as an osteopath. The court stated that "osteopathy is not defined in the statute."

The court further stated:

". . . We must look to the lawbooks for the definition of the term. 3 Words and Phrases, 2d series, 803, defines osteopathy as 'a method of treating diseases of the human body without the use of drugs, by means of manipulation applied to various nerve centers, chiefly those along the spine, with a view to inducing free circulation of the blood and lymph, and an equal distribution of the nerve forces. Special attention is given to the readjustment of any bones, muscles or ligaments not in the normal position. It is that method of the healing art accomplished by a system of rubbing or kneading the body.'

"Osteopathy when practiced by a physician or surgeon, as is defined in section 65-1005, may be and probably is a part of the art or science of healing, but the practice of osteopathy, while it may be a part of the art of healing, is not comprehended within the term 'practicing medicine,' nor within the term 'surgical operation,' as used in section 65-1005, of the Revised Statutes. Section 65-1508 of the Revised Statutes, providing that nothing in the optometry act shall be construed as preventing regular registered physicians and surgeons from practicing optometry, does not include those who are registered to practice osteopathy." (pp. 747, 748.)

In Webster's New International Dictionary (1935 ed.) osteopathy is defined as follows:

"a Any disease of the bones. b A system of therapeutics based on the theory that diseases are due chiefly to mechanical derangement, esp. displacements of bones, as the vertebrae, with resultant pressure on nerves and blood vessels and corresponding interference with innervation and circulation. Treatment is directed toward mechanical correction, esp. by manipulation of the parts."

In Funk & Wagnalls New Standard Dictionary, osteopathy is defined as follows:

"1. A system of treating disease without drugs, propounded by Dr. A. T.

Still, 1874. It is based on the belief that disease is caused by some part of the human mechanism being out of proper adjustment, as in the case of misplaced bone, cartilage, or ligament, adhesions, or contractions of muscle, etc., resulting in unnatural pressure on or obstruction to nerve, blood, or lymph. Osteopathy, through the agency or use of the bones (especially the long ones which are employed as levers), seeks to adjust correctly the misplaced parts by manipulation. 2. Any disease of the bones."

In the Century Dictionary and Cyclopedia, osteopathy is defined as follows:

"A theory of disease and a method of cure, advocated by Dr. A. T. Still, resting upon the supposition that most diseases are traceable to deformation of some part of the skeleton (often due to accident) which, by mechanical pressure on the adjacent nerves and vessels, interferes with their action and the circulation of the blood. As a remedy a form of manipulation is used."

In *Mabry v. State Board of Examiners*, 190 Ga. 751, 10 S. E. 2d 740, the action was to enjoin the defendants from practicing optometry. The contentions of defendants are thus stated by the court:

". . . Secondly, the defendants contend that by the code, § 84-1209, a licensed osteopath is authorized to practice osteopathy as taught and practiced in legally incorporated and reputable colleges of osteopathy as provided in chapter 84-12; that Turner holds a license as an osteopath, that such license authorizes him to practice what he was taught and what he practiced in the college from which he graduated, inasmuch as that college meets the code requirements; and that since he was taught ophthalmology, which includes measurement of power of vision and adaptation of lenses to correct faulty or defective sight, he can practice this by virtue of his license.

.  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .

"The code, § 84-1209, declares that Turner's license authorizes him to practice osteopathy as taught and practiced in the legally incorporated and reputable colleges of osteopathy as defined in chapter 84-12. Unfortunately for the courts, when enacting chapter 84-12 relating to osteopathy in 1909, the legislature did not define the meaning of osteopathy, but left its meaning to be determined by how it was taught and practiced in reputable colleges of osteopathy. The language of the statute of necessity requires an examination of these facts as they are found to be in reputable colleges of osteopathy. . . ." (pp. 754, 755.)

After quoting various definitions of osteopathy, the court stated:

". . . From these definitions it is apparent that osteopathy is based on the theory that human ailments result from disarrangement or misplacement of bones, nerves, and blood vessels, and that the cure for the ailment is the correction of such misplacement, thereby giving nature an opportunity to heal. It follows that to be a reputable college of osteopathy as referred to by our statute the course of study taught and practiced must conform to these authoritative definitions. It is also true that any course taught or practiced at such colleges which is outside the true scope of osteopathy cannot be brought within

its scope merely because it is given by an osteopathic college. The code, § 84-1209, properly construed, authorizes the licensee thereunder to practice osteopathy, and that only as taught by reputable colleges." (p. 756.)

Well considered decisions in other jurisdictions carefully distinguish the practice of osteopathy from the practice of medicine and surgery. (*People v. Fowler,* 32 Cal. App. 2d 737, 84 P. 2d 326; *State v. Wagner,* 139 Neb. 471, 297 N. W. 906; *Burke v. Kansas State Osteopathic Ass'n,* 111 F. 2d 250; *Georgia Ass'n of O. Physicians and Surgeons v. Allen,* 31 Fed. Supp. 206.)

The words of a statute must be taken in the sense in which they were understood at the time the statute was enacted. (25 R. C. L. 959; *People v. Fowler,* supra.)

The effect of the words in G. S. 1935, 65-1201, "as taught and practiced in the legally incorporated colleges of osteopathy of good repute" is not to set at large the settled meaning of osteopathy and obliterate the distinction between the practice of osteopathy and the practice of medicine and surgery.

Under G. S. 1935, 65-1201 and 65-1202, the board is authorized to grant a certificate to practice osteopathy only to persons who have met certain requirements. Those who have not met these requirements and who have not graduated from an osteopathic school or college of good repute are not eligible to receive a certificate. The obvious purpose of the legislature was to exclude the unfit, and thus protect the osteopathic profession as well as the public. The purpose, as we read the statute, was not to enlarge the meaning of osteopathy, but to guard that profession from applicants who had graduated from schools of low standards that purported to teach osteopathy.

We have set forth above authoritative definitions of osteopathy. To be a reputable college of osteopathy within the meaning of our statute the course of study taught and practiced must conform to those definitions. The theory of defendants that they are authorized to practice whatever might be taught in such schools cannot be sustained by a fair construction of our statutes, by the former decisions of this court, and is not supported by any well-considered case in any other jurisdiction which has been called to our attention. To say that the scope of practice of an osteopathic physician in this state is measured by what is or may be taught in osteopathic colleges of good repute is equivalent to saying that the law of Kansas fixing the boundary line between the practice of medicine and

surgery and the practice of osteopathy must be determined by the shift in the subjects taught in an unknown number of colleges in an unknown number of states. We find no warrant for this contention upon any proper construction of our statutes.

In the brief for defendant it is stated that "What constitutes the scope of osteopathic practice under our statute is a question of fact and a question of fact only." This is another way of asserting that the proper construction of a statute is a matter for the jury and not for the court. If the theory of defendants was put in practice the law would be as chameleon-hued as the various verdicts of successive juries. The contention cannot be sustained. (See authorities above cited.)

In *State, ex rel., v. Gleason,* supra, the proceeding was in quo warranto to oust the defendant from the unlawful practice of medicine and surgery. The defendant in his answer alleged:

"Defendant admits that he is a duly licensed osteopathic physician and surgeon as alleged in paragraph 4 of said petition and states that as such he has for many years treated patients both medically and surgically, as alleged in said paragraph 4, and is now so doing.

"Defendant for his further answer states that he is authorized, empowered and privileged to engage in the practice of medicine and surgery, including drug therapy, under his license as an osteopathic physician and surgeon as defined by section 65-1201, G. S. 1935, and states that at all times mentioned in said petition he has treated patients both medically and surgically as taught and practiced in legally incorporated colleges of osteopathy of good repute." (p. 3.)

As some question is raised as to the scope of that decision, we quote from the final order (148 Kan. 459, 460, 83 P. 2d 425):

"Upon the hearing of these motions we were informed by the assistant attorney general, who has handled the case on behalf of plaintiff from the beginning, that this action was brought at the request of those licensed in this state to practice osteopathy, including the defendant, and for the sole purpose of having the decision of this court upon the major questions of law involved, which questions were formulated by defendant and were submitted to the court and decided in its opinion, and that it was not contemplated to ask the court in this case to go into the details of the narrow field where the two systems of healing, otherwise well outlined as being separate and distinct, might have some things in common, and to say that a specific act or thing could or could not be done lawfully by an osteopath. These statements as to the circumstances under which the action was brought, and the purposes it is designed to accomplish, were not controverted by defendant. We think, therefore, that final judgment should be entered in this case in harmony with our opinion, and that the motion for the appointment of a commissioner should be overruled.

"In its petition plaintiff alleged defendant owns and operates a hospital in which he practices medicine and surgery generally, and in which he permits other persons licensed only as osteopaths to practice medicine and surgery generally. We are asked to oust defendant from so practicing medicine and surgery in his hospital, and this will be done. We are asked also to oust him from permitting others, licensed only as osteopaths, to practice medicine and surgery generally in his hospital. We decline to make that order, since it would require defendant to watch continuously what other licensed osteopaths are doing in his hospital. We think that burden should not be put on defendant; that those licensed as osteopaths only should guard their own conduct in this respect. The hospital, of course, may be operated lawfully for the practice of osteopathy. Persons licensed only as osteopaths, if heretofore mistaken as to their authority with respect to the practice of medicine and surgery, and who, because of such mistake, had extended their practice into a field in which they are not authorized to engage, should, and in all probability will, hereafter conform their practice to the science or system of osteopathy as distinct from the practice of medicine and surgery, in harmony with our statutes as construed in our opinon in this case. If defendant, or any other person licensed only as an osteopath, should fail to confine his practice of the healing art to the science or system of osteopathy, as that term is used in our statutes, as interpreted and construed in our opinion, any remedies the state or others have with respect thereto are not abrogated or decreased by anything we have said in this case.

"Therefore, it is by the court considered, adjudged and decreed that the defendant, B. L. Gleason, be and he is hereby ousted from the practice of medicine and surgery; and it is further adjudged and decreed that under his license to practice osteopathy he is limited in the practice of the healing art to the practice of the science or system of osteopathy authorized by our statutes pertaining thereto, as such statutes have been defined and construed in the opinion of the court heretofore rendered in this cause."

Defendants also question the extent of our ruling in *Gafney v. The Wilson County Hospital*, supra. In the opinion on the motions (152 Kan. 1, 2, 102 P. 2d 893), it was stated:

"The motion of defendant to strike parts of plaintiff's petition is sustained to this extent: Paragraphs B and D of plaintiff's amended petition do not state a specific cause of action, nor do they tender an issue which can properly be litigated between the parties to this action, and those paragraphs are declared stricken."

In a footnote to this opinion we set forth paragraphs B and D which were ordered stricken. An examination of the allegations stricken will disclose that the questions there decided are substantially the same as now urged upon us.

We adhere to the conclusions reached in our former decisions. The views therein expressed reconcile the different provisions of the statutes so far as to make them consistent, harmonious and sensible.

The matter stricken by the trial court was a mere conclusion of law and constituted no defense to the acts charged. While defendants were authorized to practice osteopathy, they were not authorized to practice medicine and surgery. The acts charged constituted the practice of medicine and surgery as defined by G. S. 1935, 65-1005.

We have given careful consideration to that part of the answer of defendants wherein it is alleged that the use of surgical instruments for operative treatment to remove unnatural growths and diseased or decayed parts of the body that cannot be rehabilitated and the use of drugs and other medicinal agencies to provide symtomatic relief while a cure is being effected, is an important and necessary part of the practice of osteopathy. In *Burke v. Kansas State Osteopathic Ass'n,* 111 F. 2d, 250, it was held as stated in the syllabus:

"The need, if any, of using narcotics or other drugs to relieve pain in administering treatment by osteopathic therapy should be addressed to the Kansas legislature, rather than to the courts."

We find no authority in our statutes for the limited use of medicine and surgery contended for by defendants, and it is beyond the power of this court to write an exception into the statute. Clearly this is a matter for the consideration of the legislature, not the courts.

It follows that the order of the court in sustaining the motion to strike was not an appealable order and that the appeal must be dismissed. It is so ordered.

PARAGRAPHS B AND D REFERRED TO IN THE OPINION

"B.

"This plaintiff has had and will continue to have patients residing in Wilson county who have desired, and will desire to enter the Wilson County Hospital for the purpose of being treated by this plaintiff during which treatment it becomes necessary or advisable to perform minor surgical operations or give minor surgical attention such as lancing boils, removing abscesses, hemorrhoids, etc., but the defendants have denied and are denying to this plaintiff and his patients the use of surgical instruments in the Wilson County Hospital for such purpose and have denied and are denying to this plaintiff the use of any kind of instrument of whatsoever nature or for what purpose while treating patients in the Wilson County Hospital.

"That on or about the first day of December, 1938, the plaintiff consulted E. A. Warren and A. S. Hopkins, members of the board of trustees of the Wilson County Hospital, as to the practice rights

which he would be afforded in the Wilson County Hospital, and was informed that he would not be permitted to use surgical instruments of any character for any purpose while treating patients in the Wilson County Hospital. That in view of such definite refusal, he has not attempted to take patients to the Wilson County Hospital for the purposes above mentioned, but has had to administer such treatment at his office or in the homes of patients, and he is thereby being denied the use of the Wilson County Hospital for the treatment of patients suffering with the above mentioned ailments. That because of professional confidence, the plaintiff is not here setting out a list of all his patients nor giving the specific ailments with which such individual patients are suffering. In fact, those who will in the future require such treatment cannot now be anticipated.

## "D.

"Plaintiff will have patients who desire to enter the Wilson County Hospital for treatment by this plaintiff who will require during the course of their treatment the administration of some one or more of the agencies hereinafter immediately set out and identified as paragraphs (a) to (p) and the plaintiff will, during the course of his practice, have occasion to use in the treatment of his various patients all of such agencies, but the defendants have denied and are denying this plaintiff the right to use any of such agencies while treating patients in the Wilson County Hospital:

(a) Anesthetics, agents which temporarily destroy sensation.

(b) Anthelmintics, agents which destroy worms inhabiting the intestinal tract.

(c) Antidotes and emetics, agents which counteract or affect poisoning.

(d) Antiseptics and disinfectants, agents which destroy or arrest the development of the microorganisms.

(e) Laxatives or purgatives, agents which increase or hasten the intestinal evacuations.

(f) Parasiticides, agents which destroy the animal and vegetable parasites found upon the human body.

(g) Sedatives and hypnotics, agents which exert a soothing influence, diminishing pain.

(h) Specifics, agents which have a known selective curative influence on a particular disease, i. e., mercury and arsenic is specific to syphilis, quinine to malaria, etc.

(*i*) Styptice and hemostatics, agents which arrest bleeding.

(*j*) Restoratives and concentrated foods, differing from the term medicine as commonly used in that they supply or sustain various parts of the body, *i. e.*, glucose, glandular extracts, chemical elements, vitamins, etc.

(*k*) Biological products, such as vaccines, toxins, and antitoxins.

(*l*) Antispasmodics, agents for the relief of spasm in any organ.

(*m*) Stimulants and depressants, agents which excite action in the vital centers—usually emergency treatment.

(*n*) Diuretics, agents which affect kidney activity.

(*o*) Antipyretics, agents which reduce temperature.

(*p*) Cardiac depressants and stimulants, agents which affect the activity of the heart.

"Plaintiff has listed the foregoing agencies for the purpose of informing the defendants and the court as to his contention as to the scope of his practice rights, and for the purpose of showing in detail the extent and effect of the practice rights denied this plaintiff by defendants.

"Plaintiff has set out after each specific agency insofar as practicable, its use and effect. It would require hundreds of pages to set out in detail the nature of cases in which such agencies should or should not be used and the limited extent to which their use is recognized as an adjunct to the practice of osteopathy as osteopathy is taught and practiced in legally incorporated colleges of osteopathy of good repute. Plaintiff further alleges that he carries on a general practice, treating all of the diseases, injuries and ailments of the human body, that such agencies are largely used for symptomatic, temporary or emergency relief, and the welfare of the patient would not permit an extended controversy with hospital authorities as to the right of plaintiff to administer them."