STATE v. McKNIGHT.

(Filed October 21, 1902.)

PHYSICIANS AND SURGEONS—*Practicing Medicine*—*Licenses*—
   *Osteopathy*—*Acts 1885, Chap 117*—*Acts 1889, Chap. 181*—*The
   Code, Secs. 3124, 3132.*

   An osteopath is not required to secure license to practice his
      profession.

INDICTMENT against Harry P. McKnight, heard by Judge
*W. S. O'B. Robinson* and a jury, at August Term, 1902, of
the Superior Court of MOORE County.   From a judgment of
guilty on a special verdict, the State appealed.

Indictment for practicing medicine without license, tried
before Robinson, J., and a jury, August Term, 1902, Moore
Superior Court.   The jury returned the following special
verdict: "That the defendant advertised in the *Free Press,* a
newspaper published in Southern Pines, Moore County,
North Carolina, before the finding of the bill of indictment
herein, his profession or business in the following words, to-
wit: 'Dr. Harry McKnight.   All acute and chronic diseases
successfully treated without drugs or medicines.   Office hours,
nine to eleven a. m.; two to five p. m.; seven to eight-thirty
p. m.   Second floor brick building, opposite depot.'

"That about the first of the year, 1902, the defendant came
Southern Pines, in Moore County, opened an office, at the
door of which he placed his sign, in these words: 'Office of
Dr. Harry McKnight,' and began the treatment of acute and
chronic diseases without drugs or medicines; that the defend-
ant had numerous patients, and claimed to treat as many
patients as any other physician in Southern Pines; that his
treatment of said patients did not consist in the administra-
tion of drugs or medicines, but in manipulation, kneading,
flexing and rubbing the body of his patients, and in the ap-

plication of hot and cold baths, and in prescribing rules for diet and exercise, and made use of these different processes for different patients; that the defendant took supreme charge of the cases of his patients, with a view of effecting a cure and restoring his patients to sound bodily health; that the defendant was engaged in the general practice of osteopathy, and professed to effect the cure of diseases by the practice of that science; that he also practiced hypnotism and suggestion under hypnotism, such as deep breathing, and magnetic healing, and the like, for the purpose of effecting a cure and restoring his patients to sound bodily health; that the defendant exhibited a diploma issued by the Columbia College of Osteopathy, duly incorporated under the laws of Illinois, conferring upon the defendant the degree of Doctor of Osteopathy, dated May 13, 1900, but the defendant was not licensed to practice medicine or surgery, or any of the branches thereof, nor to prescribe for the cure of diseases for fee or reward, as required by chapter 34 of The Code of North Carolina, and the amendments thereto; that the defendant charged a fee or reward for his services in the treatment of his patients; that upon two occasions he used a small surgeon's knife in opening an abscess in the mouth of one Shedd, but charged no fee for his services.

"That all the foregoing facts took place in Moore County, North Carolina, prior to the finding of the bill of indictment, and during the year 1902. If, upon the foregoing finding of facts, the Court adjudges the defendant guilty, then the jury find him guilty; and if the Court adjudges the defendant not guilty, the jury returns for its verdict not guilty."

The Court being of opinion that the defendant was not guilty, as charged in the bill of indictment, the jury, in accordance therewith, returned a verdict of not guilty, and judgment was entered discharging the prisoner. Appeal by the State.

*Robert D. Gilmer, Attorney-General,* and *W. J. Adams,* for the State.

*Harry P. McKnight, in propria persona,* for defendant.

Clark, J.    Chapter 117, Laws 1885, amending The Code, Sec. 3132, under which this bill was drawn, reads as follows: "Section 3122. And any person who shall begin the practice of medicine or surgery in this State, for fee or reward, after the passage of this act, without first having obtained license from said board of examiners, shall not only not be entitled to sue for or recover, before any Court, any medical bill for services rendered in the practice of medicine or surgery, or any of the branches thereof, but shall also be guilty of a misdemeanor, and upon conviction thereof shall be fined not less than twenty-five dollars nor more than one hundred dollars, or imprisoned at the discretion of the Court for each and every offense: *Provided,* that this act shall not be construed to apply to women who pursue the avocation of midwife; and provided further, that this act shall not apply to regularly licensed physicians and surgeons resident in a neighboring State." This last clause has since been modified. Laws 1889, Chap. 181.

The constitutionality of this act was discussed and affirmed. *State v. Call,* 121 N. C., 643. The simple question, therefore, upon the facts set out in the special verdict is whether one who practices "osteopathy" is indictable if he has not procured the license required for any one by the above section before beginning "the practice of medicine or surgery."

The special verdict finds that the defendant's "treatment of his patients did not consist in the administration of drugs or medicines, but in manipulation, kneading, flexing and rubbing the body of his patients, and in the application of hot and cold baths, and in prescribing rules for diet and exercise,

\* \* \* that the defendant was engaged in the general practice of osteopathy, and professed to effect the cure of diseases by the practice of that science; that he also practiced hypnotism and suggestion under hypnotism." It is also found that "upon two occasions he used a small surgeon's knife in opening an abscess in the mouth of one Shedd, but charged no fee for his services."

The only surgery was "without fee or reward," an act of charity, and that was incidental and not in the usual course of the practice of osteopathy. It can not be said that one "practices medicine and surgery" when he uses neither drugs, medicine nor surgery.

Section 3124 requires the "Board of Medical Examiners" to examine all applicants "to practice medicine or surgery," in "anatomy, physiology, surgery, pathology, medical hygiene, chemistry, pharmacy, *materia medica,* therapeutics, obstetrics and the practice of medicine," almost all of which would be useless knowledge to exact of an osteopath who declines to use medicine, drugs or surgery, and whose treatment consists solely in kneading, flexing and rubbing the body, applying hot and cold baths, and prescribing diet and exercise.

It can not be conceived that the Legislature would require the above examination for a profession which eschews the use of drugs and surgery. The medical society of this State being "allopaths," would certainly not recognize an "osteopath" as one of their body, any more than they would a "homeopath," nor license any one to pursue that calling with their diploma as his authority so to do, and if they would not, and we were to hold it indictable to practice osteopathy without such license, it would be a judicial prohibition upon the exercise of that phase of healing.

In *Smith v. Lane,* 31 N. Y., 632, construing a statute very similar to ours, it is said: "To entitle a person to a certificate

under this provision, it would be necessary that he should be qualified either to practice medicine or surgery in all its branches. If that was not made to appear, he could receive no certificate under the provisions of this act. For that reason, it appears to be quite manifest that the object of the Legislature in the enactment of this chapter was only to provide for regulating the practice of medicine or surgery, as those terms are usually and generally understood, and confining them to such significance it is evident that they would not include the occupation of the plaintiff. The practice of medicine is a pursuit very generally known and understood, and so also is that of surgery. The former includes the application and use of medicines and drugs for the purpose of curing, mitigating or alleviating bodily diseases, while the functions of the latter are limited to manual operations usually performed by surgical instruments or appliances. It was entirely proper for the Legislature, by means of this chapter, to prescribe the qualifications of the persons who might be entrusted with the performance of these very important duties. The health and safety of society could be maintained and protected in no other manner. * * * No such danger could possibly arise from the treatment to which plaintiff's occupation was confined."

In *State v. Leffring,* 61 Ohio St., 39; 46 L. R. A., 334; the same conclusion was reached, and also in *Nelson v. St. Board Health,* 22 Ky., 438; 50 L. R. A., 383. From this last case we learn that osteopathy originated with Dr. A. T. Still, of Kirksville, Mo., 1871, and that at a college of osteopathy in that State, in 1900 (when that opinion was filed) there were over five hundred students from twenty-nine States, besides several from Canada. And there are doubtless other colleges of osteopathy, for the special verdict finds that the defendant exhibited a diploma from the Columbia College of Osteopathy in Illinois.

It is argued to us that the science, if it be a science, of osteopathy is an imposition. Of that, we, judicially speaking, know nothing. It is not found as a fact in this verdict. We only know that the practice of osteopathy is not the "practice of medicine or surgery," as commonly understood, and therefore it is not necessary to have a license from the Board of Medical Examiners before practicing it. If it is a fraud and imposition, and injury results, the osteopath is liable both civilly and criminally. Certainly "baths and diet" could be advantageously prescribed to many people, and rubbing is well enough if the patient is not rubbed the wrong way. The real complaint is that osteopaths restrict themselves to these remedies, and do not resort to drugs and surgery, but that very fact establishes that they do not violate the law requiring a license to practice medicine and surgery. Doubtless there is an appeal to the imagination, but that is a necessary ingredient in all systems of healing. Who does not know that a prescription by a physician, in whom the patient has implicit confidence, is oftentimes more effective than the same treatment by one in whom he has none, and that at times bread pills and other harmless prescriptions are administered with good results? The aim of medical science, which is now probably the most progressive of all the professions, is simply to "assist nature." Osteopathy proposes to do that by other methods than by the use of medicines or the surgeon's knife.

We attach no weight to the argument that the defendant hung out his sign and advertised himself as "Doctor." The special verdict finds that he had a diploma from a college of osteopathy bestowing that title upon him. There are many kinds of doctors, besides doctors of medicine—as doctors of laws, doctors of divinity, doctors of physics, and veterinary doctors, and others still. Besides, in this country, so far, at least, as titles go, "honors are easy." We know from com-

mon knowledge that druggists' clerks are ordinarily addressed as "doctor," Justices of the Peace are usually called "judge," and a teacher of the saltatory art always styles himself "professor," while "Yarborough House Colonels" and "honorables" by courtesy of like tenor are almost as

> " Thick as autumnal leaves that strow the brooks,
> "In vallombrosa."

Certainly the Courts can not abate a man as a nuisance because some one gives him, or he gives himself, a title.

If the General Assembly shall deem osteopathy a legitimate calling, it may see fit possibly to secure educated and skilled practitioners by requiring an examination and license by learned osteopaths of applicants for license, but certainly the examination would be on subjects appropriate to secure competency therein, and not on an entirely different course of learning, such as that prescribed for applicants to practice "medicine or surgery." *State v. Gravett*, 65 Ohio St., 289 ; 55 L. R. A., 791. Dentistry is not the "practice of medicine or surgery," but it is a related profession, as is also pharmacy, and each has its prescribed course of examination of applicants for license. Whether the same rights and dignity shall be bestowed on osteopathy is a matter for the General Assembly, or if it is found to be a fraud and imposition, its exercise is indictable. It seems that it more nearly approximates "nursing," in many respects (though different in others), when taught as a profession, as it now is.

The State has not restricted the cure of the body to the practice of medicine and surgery—"allopathy," as it is termed— nor required that before any one can be treated for any bodily ill, the physician must have acquired a competent knowledge of allopathy, and be licensed by those skilled therein. To do that, would be to limit progress by establishing allopathy as the State system of healing, and forbidding all others. This would be as foreign to our system as a State

church for the cure of souls. All the State has done has been to enact that when one wishes to practice "medicine or surgery," he must, as a protection to the public (not to the doctors), be examined and licensed by those skilled in "surgery and medicine." To restrict all healing to that one kind, to allopathy, excluding homeopathy, osteopathy and all other treatments, might be a protection to doctors in "surgery and medicine," but that is not the object of the act, and might make it unconstitutional, because creating a monopoly. The State can only regulate for the protection of the public. There is also "divine science" (which some one has said is neither divine nor a science), and there may be other methods still. Whether these shall be licensed and regulated, is a matter for the law-making power to determine before any question in that respect can come before the Court. Certainly a statute requiring examination and license "before beginning the practice of medicine or surgery" neither regulates nor forbids any mode of treatment which absolutely excludes medicines and surgery from its pathology.

All that the Courts can declare upon the facts found in the special verdict is that the defendant's practice is not "the practice of medicine or surgery," and no license from the Medical Board of Examiners is required.

No Error.