## MABRY *et al. v.* STATE BOARD OF EXAMINERS IN OPTOMETRY *et al.*

No. 13397.    SEPTEMBER 24, 1940.

*Alston, Foster, Moise & Sibley, William B. Spann Jr., Burress & Dillard,* and *David A. Pirkle Jr.,* for plaintiffs in error.

*Hirsch, Smith & Kilpatrick, J. Mallory Hunt,* and *Louis Regenstein Jr.,* contra.

DUCKWORTH, Justice. The single question presented by this record is whether, under the statutes of this State, one licensed as an osteopath under chapter 84-12 of the Code can by virtue of such license practice optometry without complying with the requirements of chapter 84-11. The question is one of mixed law and fact. The facts are not in dispute. The solution requires an application of the statutes, properly construed, to these admitted facts. The plaintiffs in error concede that the facts in the case would sustain the judgment complained of, but for their defense, which is twofold, each having root in different sections of the Code. Their first position is that section 84-1108 renders all of chapter 84-11, relating to optometrists, inapplicable to osteopaths, because this section expressly provides that "Nothing in this chapter shall be construed to apply to physicians and surgeons duly licensed to practice medicine." Secondly, the defendants contend that by the Code, § 84-1209, a licensed osteopath is authorized to practice osteopathy as taught and practiced in legally incorporated and reputable colleges of osteopathy as provided in chapter 84-12; that Turner holds a license as an osteopath, that such license authorizes him to practice what he was taught and what he practiced in the college from which he graduated, inasmuch as that college meets the Code requirements; and that since he was taught ophthalmology, which includes measurement of power of vision and adaptation of lenses to correct faulty or defective sight, he can practice this by virtue of his license. We will consider these contentions separately.

■ Since under the Code, § 84-1108, it is expressly provided that nothing in chapter 84-11, relating to optometrists, shall apply to "physicians and surgeons duly licensed to practice medicine," it must be conceded that nothing in chapter 84-11 applies to those who can qualify as physicians and surgeons duly licensed to practice medicine. Stating it differently, physicians and surgeons duly licensed to practice medicine are not required to procure a license under chapter 84-11, in order to practice optometry without violating the law. The immediate question therefore is whether Turner, who is licensed as an osteopath under chapter 84-12, can be properly classified as a physician and surgeon duly licensed to practice

medicine. The Code, § 84-1209, declares that Turner's license authorizes him to practice osteopathy as taught and practiced in the legally incorporated and reputable colleges of osteopathy as defined in chapter 84-12. Unfortunately for the courts, when enacting chapter 84-12 relating to osteopathy in 1909, the legislature did not define the meaning of osteopathy, but left its meaning to be determined by how it was taught and practiced in reputable colleges of osteopathy. The language of the statute of necessity requires an examination of these facts as they are found to be in reputable colleges of osteopathy. In dealing with a similar statute of the State of Kansas, the Tenth Circuit Court of Appeals, in Burke v. Kansas State Osteopathic Association, 111 Fed. (2d) 250, construed a volume of evidence bearing upon this question, and reached the conclusion that "the fact that in an osteopathic college the broad principles of medicine and surgery were investigated and considered, merely for the purpose of giving the student body a knowledge of what those who practice medicine and surgery believe, would not be sufficient to conclude that those licensed to practice osteopathy would have the right to practice medicine or surgery." In State v. Watters,    N. J.    (143 Atl. 749), the Supreme Court of New Jersey, in answering the contention of the defendant that as a licensed osteopath he was entitled to practice optometry, quoted the New Jersey statute defining osteopathy, as follows: "A method or system of healing whereby displaced structures of the body are replaced in such manner by the hand or hands of the operator that the constituent elements of the diseased body may reassociate themselves for the cure of the disease." In that case the appellant had been convicted of practicing optometry without a license, and the optometry statute exempted licensed physicians in the following language: "Nothing in this act shall be construed to apply to duly licensed physicians authorized to practice medicine under the laws of the State of New Jersey." The conviction was affirmed, and it was held that the osteopath license did not bring the appellant in the category of a licensed physician who might practice medicine and surgery. The term "osteopathy" is defined in 46 C. J. 1142, as follows: "A modern system or science of treating human diseases by kneading and rubbing the body; a method of treating diseases of the human body without the use of drugs, by means of manipulations applied to various

nerve centers, chiefly those along the spine, with a view to inducing free circulation of blood and lymph, and an equal distribution of the nerve forces." Bouvier's Law Dictionary (Student's ed.), 881, defines osteopathy as "a method of treating diseases by kneading or manipulation of the body, and does not teach surgery, bacteriology, materia medica, or therapeutics." It is defined by Webster's New International Dictionary as "A system of treatment based on the theory that diseases are chiefly due to deranged mechanism of the bones, nerves, blood vessels, and other tissues, and can be remedied by manipulations of these parts." From these definitions it is apparent that osteopathy is based on the theory that human ailments result from disarrangement or misplacement of bones, nerves, and blood vessels, and that the cure for the ailment is the correction of such misplacement, thereby giving nature an opportunity to heal. It follows that to be a reputable college of osteopathy as referred to by our statute the course of study taught and practiced must conform to these authoritative definitions. It is also true that any course taught or practiced at such colleges which is outside the true scope of osteopathy can not be brought within its scope merely because it is given by an osteopathic college. The Code, § 84-1209, properly construed, authorizes the licensee thereunder to practice osteopathy, and that only as taught by reputable colleges.

We now turn to a consideration of the language "physicians and surgeons duly licensed to practice medicine." Such a license can be issued in this State by one authority, and one only, which is the State Board of Medical Examiners. Code, § 84-907. This means that a license issued by the State Board of Osteopathic Examiners under chapter 84-12 of the Code, regardless of what such license purports to authorize, does not and can not authorize the "practice of medicine" as that term is defined in chapter 84-9, which is the only statute in this State defining the same. It is true, as contended by plaintiffs in error, that in § 84-906 it is declared that, "Nothing in this chapter shall be construed to prohibit . . the practice of . . osteopaths not prescribing medicines or administering drugs." By this provision an osteopath may practice his profession without procuring a license to practice medicine under chapter 84-9, provided he does not prescribe medicine or administer drugs. It is submitted, however, that this exemption will not

enable an osteopath to prescribe medicine, whether that medicine be a drug or otherwise; and at this point the question arises whether lenses for the relief of eye trouble should be classified as medicine. The defendant Turner has been giving prescriptions for this purpose. Certainly the above exemption constitutes no authority for such practice. The Code, § 84-907, requires all applicants for a license to practice medicine or surgery to give proof that they are graduates of one of two colleges of medicine now existing in Georgia or from some other legally incorporated college of medicine in good standing; and section 84-910 defines the requirements of medical colleges to give them good standing with the Medical Examining Board. It is obvious that the defendant Turner does not qualify under chapter 84-9 as a "physician and surgeon duly licensed to practice medicine." He has not met the educational requirements, nor does he claim to hold a license from the State Board of Medical Examiners, which is the only authority under the law of this State empowered to issue a license to practice medicine. It is strongly urged by counsel that the provisions of the Code, §§ 84-9918 and 84-9919, making fraudulent practice of osteopathy a crime, by employing the language "osteopathy or other nondrug-giving school of medical practice," has defined osteopathy as "medical practice." While we think the language as used does not sustain the contention, yet if osteopathy is conceded to be a nondrug-giving medical practice, a license to that effect under chapter 84-12 can not be a substitute for a license to practice medicine under chapter 84-9. The positive requirements of the latter chapter can not be evaded or nullified by the language used in a negative sense and for an entirely different purpose in the Code sections relied upon. Nor can we agree to the contention that the words "the same as physicians of other schools," as used in § 84-1211, sustain the claim that the legislature has thereby placed osteopaths in the same class with physicians and surgeons duly licensed to practice medicine. In that section it is declared that osteopathic physicians shall observe and be subject to State and municipal regulations relating to the control of contagious diseases, the reporting and certifying of births and deaths, and all matters relating to matters of public health, the same as physicians of other schools. This language does not broaden the definition of an osteopath. It simply sets the requirements of others in the respects stated as a requirement for an osteopath.

In Georgia Association of Osteopathic Physicians and Surgeons *v.* Allen, 31 Fed. Supp. 206, the question was whether under the narcotic act (Ga. L. 1935, p. 418; Code, c. 42-8) an osteopath in this State is entitled to register with the collector of internal revenue. Section 42-806 authorizes the sale of narcotic drugs to a physician, and section 42-808 authorizes physicians to dispense narcotic drugs. Section 42-802(2) defines the word "physician" to mean a person authorized by law to practice medicine in this State, and any other person authorized by law to treat sick and injured human beings in this State, and to use narcotic drugs in connection with such treatment. In a very able opinion, Judge Deaver held that an osteopath was not a physician as there defined, and in conclusion said: "The construction herein given seems to be the only one which will avoid inconsistencies and harmonize the State statutes. Briefly restated, it is that the definition in 84-901 is broad enough to include every branch of practice; that if no other branch were now authorized by law, then all practitioners would not only come within the definition but would be subject to all the medical-practice act of 1913 [chapter 84-9], including the requirement of license from the medical board; that as soon as any branch of healing is otherwise expressly authorized by law, then that branch is no longer subject to the act of 1913, but is excepted, not only from the requirement of license by the medical board, but also from the definition itself of 'practicing medicine'; that the practitioner of such excepted branch is no longer practicing medicine within the meaning of 84-901; that the purpose was to prevent the practice of healing in any way except by those expressly authorized; that the practice of medicine in 42-802(2) refers only to physicians licensed by the medical board; that osteopaths, not being engaged in the practice of medicine and being prohibited to use drugs without a license from the medical board, are not physicians within the meaning of the State narcotic act, and are therefore not entitled to register under the Federal narcotic act." In State ex rel. *v.* Eustace, 117 Kan. 746 (233 Pac. 109), the Supreme Court of Kansas dealt with a case similar in all respects to the case before us. The Kansas statute prohibited the practice of optometry without a license so to do, and contained the following provision: "Nothing in this act shall be construed to prevent regular physicians and surgeons who are registered with the State medical board, as such,

from testing eyes and fitting glasses." The osteopath there claimed the right to practice optometry under his license as an osteopath. He contended that the practice of osteopathy is a part of practicing the healing art, and that, so far as the practice of that art is concerned, the optometry statute makes no distinction between those who practice healing art by the administration of medicine or by surgery and those who practice that art according to the science known as osteopathy. The majority opinion of the court held that while the practice of osteopathy may be a part of the healing art, it is not comprehended within the term "practicing medicine," or within the term "surgical operation," as used in the Kansas statute. The court cited as authority for its ruling In re Rust, 181 Cal. 73 (183 Pac. 548), where the California court said: "A person licensed to practice osteopathy is not a physician within the provision of section 10 of the act regulating the practice of optometry (Stats. 1913, p. 1093), which declares the provisions of the act shall not be construed to prevent duly licensed physicians and surgeons from treating or fitting glasses to the human eye, since the act of 1913 regulating the practice of medicine and surgery recognizes a distinction between the two professions in providing for the issuance of separate and distinct licenses, which distinction was also recognized in prior repealed acts." Although the opinion was concurred in by only four members of the court, three dissenting, we think it sound and applicable to the present case. The plaintiffs in error can not escape the requirements of chapter 84-11 by virtue of section 84-1108, rendering the provisions of the chapter inapplicable to physicians and surgeons duly licensed to practice medicine.

■ Turner's license as an osteopath entitled him to practice osteopathy as taught in reputable colleges of osteopathy; and it is insisted that since the reputable college of which he is a graduate taught optometry, his license authorized the practice of optometry without procuring a license under chapter 84-11. Counsel rely strongly upon the dissenting opinion in State v. Eustace, supra. The minority of the court held that since the osteopath there involved was a graduate of a reputable college of osteopathy which fully taught optometry, he should be allowed to practice optometry, since the Kansas statute authorized him to practice osteopathy as taught by reputable colleges. We do not accept this view, first,

because, as stated in this opinion, such statute authorizes the practice of osteopathy, and that alone, as taught in reputable colleges of osteopathy, and optometry is not properly embraced in the meaning of osteopathy. A second reason why we reject this argument is that our statute authorizing the issuance of a license to practice osteopathy (c. 84-12) was enacted in 1909, and the statute requiring a license to practice optometry (c. 84-11) was subsequently enacted in 1916. The only persons relieved from procuring a license under the optometry act before engaging in the practice of optometry are named in section 84-1108, and, as held above, osteopaths are not embraced in any of these classes. Therefore, if it were true that originally the act of 1909 authorized one holding a license to practice osteopathy to practice optometry if it was taught in a reputable college of osteopathy, this rule was changed or repealed by the subsequent conflicting optometry act of 1916, which requires a license under that act in order to lawfully practice optometry. To the extent of conflict the latter act must control. *Staten* v. *State,* 141 *Ga.* 82 (80 S. E. 850); *Williams* v. *Western & Atlantic Railroad Co.,* 142 *Ga.* 696 (2) (83 S. E. 525). This same contention was made in Ex parte Rust, 181 Cal. 73 (183 Pac. 548), and the Supreme Court of California, after quoting a number of definitions of the term "osteopathy," in rejecting the argument stated its conclusion as follows: "It is sufficient to say that we can not see therefrom that the fitting and prescription of eye-glasses comes properly within the practice of that mode of healing. . . We can not say that the science of osteopathy includes optometry." The same contention was made in State *v.* Rust, 119 Wash. 480 (206 Pac. 33), and the Supreme Court of the State of Washington also rejected the argument and held that the license to practice osteopathy did not authorize the practice of optometry, citing in support of its ruling the California case, supra. The concluding paragraph of the opinion was as follows: "The evidence in this case shows that osteopathy embraces a full course on the ear, eye, nose, and throat, and that is the extent of the proof on the subject. That study is necessary, of course, to prepare one to properly treat those organs osteopathically. But that practice or treatment is not optometry as defined by our statute, nor is it the kind of act for which the appellant was convicted."

Finally, a fair consideration of the various statutes of the State

regulating the practice of medicine as defined in chapter 84-9, the practice of optometry as defined in chapter 84-11, and the practice of osteopathy as defined in chapter 84-12, compels the conclusion that our legislature provided for the regulation and licensing of what it construed to be practice of medicine under the first; and that although both optometry and osteopathy are arts of healing, neither constitutes practice of medicine; and while the legislature has properly recognized osteopathy as a reputable science of healing and has set up a plan for licensing osteopathic practitioners under chapter 84-12, it did not intend that this profession should be permitted to invade the field of optometry and other professions by adopting the methods of healing practiced by such professions, on the theory that such methods are taught and practiced in reputable colleges of osteopathy. This legislative intent is clearly apparent from the language used in section 84-1209. While that section authorizes an osteopathic licensee to practice osteopathy as taught and practiced in legally incorporated and reputable colleges of osteopathy, it expressly confines the authority to practice to osteopathy, and will not support any claim of authority to practice some other theory or system of healing. To construe this section as urged by plaintiffs in error would mean that by merely teaching and practicing every known science of healing in osteopathic colleges, one holding a license under chapter 84-12 would be permitted to practice without restraint all such methods of healing. This would nullify every regulatory statute of the State having for its purpose the licensing and regulation of the practice of the various professions of healing authorized by law. Our conclusion therefore is that Turner's license as an osteopath does not authorize his practice of optometry as disclosed by this record. It is conceded that if Turner's conduct is illegal, then, since he is the employee and agent of Mabry, this illegal practice is equally chargeable to Mabry and renders him subject to an injunction. The evidence demanded the judgment restraining the defendants.

*Judgment affirmed. All the Justices concur.*