NORTH CAROLINA DIVISION OF SONS OF CONFEDERATE VETERANS, PETITIONER
v. JANICE FAULKNER, COMMISSIONER OF MOTOR VEHICLES, RESPONDENT

No. COA97-1563

(Filed 29 December 1998)

1. **Motor Vehicles— special registration license plates—Sons of Confederate Veterans**

    The Sons of Confederate Veterans is a "nationally recognized civic organization" within the meaning of N.C.G.S. § 20-79.4(b)(5) so that members of the N.C. Division of Sons of Confederate Veterans are entitled to have the DMV issue to them special registration license plates bearing the organization's emblem.

2. **Costs— attorney fees—contesting State action—substantial justification**

    The trial court erred by ordering the DMV to pay the attorney fees of petitioner-N.C. Division of Sons of Confederate Veterans pursuant to N.C.G.S. § 6-19.1 in an action in which the DMV was directed to issue special registration license plates to petitioner's members because there was substantial justification for the DMV's denial of special registration license plates to petitioner's members based on its interpretation of "nationally recognized" and "civic organization" in N.C.G.S. § 20-79.4(b)(5).

    Judge TIMMONS-GOODSON dissenting in part.

Appeal by respondent from order filed 17 September 1997 by Judge Donald W. Stephens in Wake County Superior Court. Heard in the Court of Appeals 15 September 1998.

*Currin Law Firm, PLLC, by Samuel T. Currin and Margaret Person Currin, for petitioner-appellee.*

*Attorney General Michael F. Easley, by Special Deputy Attorney General Hal F. Askins, Assistant Attorney General C. Norman Young, and Special Counsel to the Attorney General Hampton Dellinger, for respondent-appellant.*

GREENE, Judge.

North Carolina Division of Motor Vehicles (DMV) Commissioner Janice Faulkner (Commissioner) appeals from the trial court's order directing DMV to issue special registration plates to the Sons of Confederate Veterans (SCV), North Carolina Division (SCV-NCD).

SCV is incorporated and headquartered in Tennessee. SCV's constitution, first adopted in 1896, states that the purposes of SCV include:

> An unquestioned allegiance to the Constitution of the United States of America . . .; to associate in one united, compact body all men of Confederate ancestry and to cultivate, perpetuate and sanctify the ties of fraternity and friendship entailed thereby; to aid and encourage the recording and teaching with impartiality of all Southern history and achievement . . . , seeing to it especially that the events of the War Between the States are authentically and clearly written and that all documents, relics and mementos produced and handed down by the active participants therein are properly treasured and preserved for posterity; to comfort, succor and assist needy Sons of Confederate Veterans, their wives, widows and orphans; to urge, aid and assist in the erection of suitable and enduring monuments and memorials to all Southern valor, military and civil, wherever done and wherever found, particularly stressing that of our heroic Confederate ancestors who, by their sacrifice, perpetuated unto us and our descendants that glorious heritage of valor, chivalry and honor which we now hold and venerate, and to instill in our descendants a devotion to and reverence for the principles represented by the Confederate States of America, to the honor, glory and memory of our fathers who fought in that Cause.

SCV's constitution further provides that SCV "shall be strictly patriotic, historical, educational, benevolent, non-political, non-racial and non-sectarian." Evidence was presented that there are in excess of

2600 SCV-NCD members in North Carolina, and that SCV's international membership exceeds 25,000. The record contains copies of SCV's bimonthly publication, the *Confederate Veteran*. This publication lists new SCV members from over twenty-five states and contains information about SCV events in various states, Brazil, and Europe. In addition, the evidence reveals that:

> [SCV-NCD] donated $5,000 to the Fort Fisher Historical Site to help with the creation of new exhibits; . . . pledged $5,000 to help restore the monuments located on the Capitol grounds; . . . participated in [North Carolina's] Adopt-A-Highway clean-up campaign; . . . secured funding of $5,000 for the restoration of Oakwood Cemetery in Raleigh; . . . donated hundreds [of] books to public libraries and schools across [North Carolina]; . . . provided scholarships . . . in medical research; . . . [and] donate[d] food and other items to various charities at Christmas and throughout the year.

After receiving tax-exempt status as a "[c]ivic league[] or organization[]" from the North Carolina Department of Revenue (Revenue Department), SCV-NCD applied to DMV for special registration license plates bearing the SCV emblem.[1] The Commissioner denied SCV-NCD's request, based on her conclusion that SCV "does not meet the statutory criteria for a civic club." The Commissioner reached this decision after comparing the purposes and activities of SCV with "the statutory language and examples of qualifying civic organizations [contained within section 20-79.4(b)(5)]." SCV-NCD appealed this decision to the trial court, and a hearing was held on 11 September 1997. The trial court, after finding that SCV-NCD met the criteria set forth by the General Assembly in section 20-79.4(b)(5), ordered DMV to issue special registration plates to SCV-NCD upon its presentation to DMV of at least 300 applications. In addition, the trial court ordered DMV to pay the cost of filing SCV-NCD's petition for judicial review, and, after finding that DMV "has failed to show substantial

---

1. SCV's emblem strikingly resembles the Confederate flag. We are aware of the sensitivity of many of our citizens to the display of the Confederate flag. Whether the display of the Confederate flag on state-issued license plates represents sound public policy is not an issue presented to this Court in this case. That is an issue for our General Assembly. We are presented only with the issue of whether SCV-NCD has complied with the language of section 20-79.4(b)(5), and note that allowing some organizations which fall within section 20-79.4(b)(5)'s criteria to obtain personalized plates while disallowing others equally within the criteria could implicate the First Amendment's restriction against content-based restraints on free speech.

justification for its ruling," ordered DMV to pay SCV-NCD's attorney's fees, pursuant to section 6-19.1, in the amount of $2,500.00.

The issues are whether: (I) SCV-NCD meets the statutory criteria for issuance of special registration plates; and (II) DMV has shown substantial justification for its actions.

I

The standard of review to be employed by the trial court on judicial review of an agency decision depends on the particular issues presented by the parties. *Act-Up Triangle v. Commission for Health Services*, 345 N.C. 699, 706, 483 S.E.2d 388, 392 (1997). In this case, SCV-NCD's primary contention before the trial court was that "the Commissioner has erroneously determined that [SCV-NCD] does not meet the statutory criteria for civic club . . . ." Accordingly, the trial court was required to apply *de novo* review of the Commissioner's decision. *See Amanini v. N.C. Dept. of Human Resources*, 114 N.C. App. 668, 674, 443 S.E.2d 114, 118 (1994) ("If [petitioner] argues the agency's decision was based on an error of law, then '*de novo*' review is required."); *Brooks, Com'r of Labor v. Rebarco, Inc.*, 91 N.C. App. 459, 464, 372 S.E.2d 342, 345 (1988) ("Incorrect statutory interpretation by an agency constitutes an error of law . . . .").

"[W]here the initial reviewing court should have conducted *de novo* review, this Court will directly review the [agency's] decision under a *de novo* review standard." *Amanini*, 114 N.C. App. at 677, 443 S.E.2d at 119; *Brooks, Comr. of Labor v. Grading Co.*, 303 N.C. 573, 580-81, 281 S.E.2d 24, 29 (1981) ("When the issue on appeal is whether a state agency erred in interpreting a statutory term, an appellate court may freely substitute its judgment for that of the agency and employ *de novo* review."). Accordingly, we review the Commissioner's decision *de novo*.

[1] Our General Assembly has provided that:

[DMV] shall issue the following types of special registration plates:

. . . .

(5) Civic Club.—Issuable to a member of a nationally recognized civic organization whose member clubs in the State are exempt from State corporate income tax under G.S. 105-130.11(a)(5). Examples of these clubs include Jaycees, Kiwanis, Optimist,

Rotary, Ruritan, and Shrine. The plate shall bear a word or phrase identifying the civic club and the emblem of the civic club. [DMV] may not issue a civic club plate authorized by this subdivision unless it receives at least 300 applications for that civic club plate.

N.C.G.S. § 20-79.4(b) (Supp. 1997). There is no dispute in the record that SCV-NCD is exempt from state corporate taxes pursuant to section 105-130.11(a)(5), or that DMV received the necessary 300 applications for SCV-NCD plates. The Commissioner contends, rather, that SCV-NCD is not a "civic club" under this statute because it is neither "nationally recognized" nor a "civic organization."

It is a well-established tenet of statutory construction that the intent of the General Assembly controls. *In re Arthur*, 291 N.C. 640, 641, 231 S.E.2d 614, 615 (1977). In ascertaining this intent, we "assume that the Legislature comprehended the import of the words it employed." *State v. Baker*, 229 N.C. 73, 77, 48 S.E.2d 61, 65 (1948). We therefore accord the words in a statute their "natural, ordinary meaning, unless the context requires a different construction." *Arthur*, 291 N.C. at 642, 231 S.E.2d at 615. The General Assembly has not defined "nationally recognized" or "civic organization" in section 20-79.4,[2] but has included a non-exclusive list of qualifying "nationally recognized civic organization[s]." The context of section 20-79.4(b)(5) therefore requires that the phrases "nationally recognized" and "civic organization" be construed to encompass organizations of a similar character as those listed. *See In re Watson*, 273 N.C. 629, 632, 161 S.E.2d 1, 5 (1968) (noting that when the General Assembly includes within a statute "a guide to its interpretation, that guide must be considered by the courts in [its] construction"). The listed "civic clubs" are Jaycee, Kiwanis, Optimist, Rotary, Ruritan, and

---

2. We note that the General Assembly has given some definition to the phrase "civic organization" in another context. *See* N.C.G.S. § 105-130.11(a)(5) (1997) (exempting "[c]ivic leagues or organizations not organized for profit, but operated exclusively for the promotion of social welfare" from taxation under that section). Although we are not bound by the General Assembly's definition of the phrase "civic organization" in section 105-130.11 because that section is concerned with a different subject, *see Carolina Truck & Body Co. v. General Motor Corp.*, 102 N.C. App. 262, 267, 402 S.E.2d 135, 138, *cert. denied*, 329 N.C. 266, 407 S.E.2d 831 (1991) (noting that only statutes relating to the *same subject* must be construed together), we find the characterization of "civic organization" in section 105-130.11 instructive because section 20-79.4 specifically refers to section 105-130.11. There is no dispute in this case that the Revenue Department has assigned SCV-NCD tax-exempt status as a civic league or organization pursuant to section 105-130.11; accordingly, we accept that SCV-NCD is a "civic organization" within the meaning of section 105-130.11.

Shrine. N.C.G.S. § 20-79.4(b)(5). To determine the character of these "civic clubs," we turn to the *Encyclopedia of Associations*, which lists "National Organizations of the U.S." and is "the only comprehensive source of detailed information concerning almost 23,000 non-profit American membership organizations of national scope." 1 *Encyclopedia of Associations* Part 1, at ix (33d ed. 1998) [hereinafter *Encyclopedia of Associations*]; *cf. State v. Martin*, 7 N.C. App. 532, 533, 173 S.E.2d 47, 48 (1970) (noting that courts may resort to dictionaries for assistance in determining the meanings of statutory terms).

Jaycee (a.k.a. Junior Chamber) is defined as an organization "dedicated to the principals of leadership training through community development, . . . [and] conducts charitable programs." 1 *Encyclopedia of Associations* Part 2, § 11742, at 1302. Kiwanis "represent[s] business and professional individuals [and] . . . [s]eeks to: provide assistance to the young and elderly; develop community facilities; foster international understanding and goodwill." *Id.*, § 11747, at 1303. Optimist is a "[s]ervice club[] dedicated to youth and community service." *Id.*, § 11758, at 1304. Rotary, an association of "[b]usiness and professional executives," undertakes "community development programs; promotes high ethical standards in business and professions; . . . [s]upports polio immunization campaigns; [and] offers scholarships to outstanding men and women." *Id.*, § 11762, at 1304. Ruritan is a "[n]onpartisan, nonsectarian community service organization . . . [which finances] charitable, educational, and benevolent activities." *Id.*, § 11764, at 1305. Shrine is a "[f]raternal and charitable organization [which] [m]aintains 22 hospitals for crippled and burned children." *Id.*, § 17026, at 1880. These organizations, regardless of their membership focus, primary purpose, or primary activity, have in common the sponsorship of charitable/benevolent activities within the community.

The organization at issue in this case, SCV, also sponsors charitable/benevolent activities within the community. The *Encyclopedia of Associations* notes that SCV, whose members are "[l]ineal and collateral descendants of Confederate Civil War veterans," engages in "historical and benevolent activities." *Id.*, § 18561, at 2033. In addition, the record reveals that SCV-NCD participates in North Carolina's Adopt-A-Highway clean-up campaign, awards scholarships, and donates food and other items to various charities. The fact that SCV is listed in the *Encyclopedia of Associations* as a "National Organization[]" also aids our determination of whether SCV is

"nationally recognized." The record reveals that SCV has divisions in twenty-four states, organized camps in foreign countries, and members in a majority of states in the United States. Although we decline to impose an arbitrary number of members or states in which an organization is active to show that it is "nationally recognized," it certainly is evidence of national recognition that an organization has ties to a majority of our states. The evidence in this case is therefore sufficient to show that SCV is of a similar character as the qualifying organizations enumerated within section 20-79.4(b)(5), and is a "nationally recognized civic organization" as that phrase is used in section 20-79.4(b)(5).

Accordingly, as SCV-NCD meets the four criteria enumerated by our General Assembly in section 20-79.4(b)(5), SCV-NCD qualifies for special registration plates.

## II

**[2]** Section 6-19.1 allows the trial court to award reasonable attorney's fees to a party contesting State action if: (1) the party prevails; (2) the trial court "finds that the agency acted without substantial justification in pressing its claim against the party"; and (3) the trial court "finds that there are no special circumstances that would make the award of attorney's fees unjust." N.C.G.S. § 6-19.1 (1997). For the purposes of section 6-19.1, "substantial justification" means " 'justified in substance or in the main'—that is, justified to a degree that could satisfy a reasonable person." *Crowell Constructors, Inc. v. State, ex rel. Cobey*, 342 N.C. 838, 844, 467 S.E.2d 675, 679 (1996) (quoting *Pierce v. Underwood*, 487 U.S. 552, 565, 101 L. Ed. 2d 490, 504 (1988)).

> This standard should not be so strictly interpreted as to require the agency to demonstrate the infallibility of each suit it initiates. Similarly, this standard should not be so loosely interpreted as to require the agency to demonstrate only that the suit is not frivolous, for "that is assuredly not the standard for Government litigation of which a reasonable person would approve."

*Id.* (quoting *Pierce*, 487 U.S. at 566, 101 L. Ed. 2d at 505). Rather, to demonstrate that it acted with substantial justification, an agency must show "that its position, at and from the time of its initial action, was rational and legitimate to such a degree that a reasonable person *could* find it satisfactory or justifiable in light of the circumstances then known to the agency." *Id.*

In this case, the trial court found "that the agency has failed to show substantial justification for its ruling and, therefore, attorney fees are awarded under G.S. § 6-19.1." The trial court further found that "reasonable attorney fees for the prosecution of this action are $2,500.00." We first note that the trial court failed to make the requisite findings of fact to support its award of attorney's fees under section 6-19.1 and applicable case law. *See N.C. Dept. of Correction v. Harding*, 120 N.C. App. 451, 455, 462 S.E.2d 671, 674 (1995) (noting that the trial court must make findings "as to the time and labor expended, the skill required, the customary fee for like work, and the experience or ability of the attorney"), *aff'd per curiam*, 344 N.C. 625, 476 S.E.2d 105 (1996). Because we reverse the award of attorney's fees, however, remand for additional findings is unnecessary. A reasonable person could find DMV's position satisfactory or justifiable in light of the circumstances. DMV advocated a narrower interpretation of the phrases "nationally recognized" and "civic organization," noting that SCV is an exclusive organization (limiting its membership to male descendants of Confederate soldiers) existing mainly in southern states, and that SCV is *primarily* a historical organization. Although we have ultimately rejected DMV's contentions, they are not facially irrational or illegitimate, and we note that the trial court did not find that these positions were mere excuses for arbitrary behavior on the part of DMV. Accordingly, the trial court's award of attorney's fees to SCV-NCD is reversed.

Affirmed in part and reversed in part.

Judge SMITH concurs.

Judge TIMMONS-GOODSON dissents.

Judge TIMMONS-GOODSON dissenting in part.

I cannot agree with the majority's conclusion that the Sons of the Confederate Veterans (SCV) meet the criteria for a civic organization set forth by the General Assembly in section 20-79.4(b)(5) of the North Carolina General Statutes. For this reason, I would reverse the order of the trial court directing the North Carolina Division of Motor Vehicles (DMV) to issue special registration plates to SCV.

As the majority notes, section 20-79.4(b)(5) of the General Statutes does not specifically define the term "civic club." Therefore,

the examples listed in section 20-79.4(b)(5)—the Jaycees, Kiwanis, Optimist, Rotary, Ruritan, and Shrine—are the best indicia of the General Assembly's intended recipients of the special registration plates. *See Friends of Hatteras Island v. Costal Resources Comm.*, 117 N.C. App. 556, 452 S.E.2d 337 (1995) (recognizing that examples set out in statute are significant in ascertaining legislature's intent). As DMV points out, the organizations enumerated in the statute share one "primary purpose," which is "to serve their communities by supporting a generally unrestricted range of charitable causes or offering charitable services to all persons." In light of the common characteristic held by the examples provided in section 20-279.4(b)(5), I am of the opinion that to be eligible for the special registration plates, the organization's chief undertaking must be to promote the ·common good and general welfare of the public at large. Notably, I find support for this position in SCV's brief, wherein it asks this Court to recognize the definition of "civic club" given in Webster's New International Dictionary. Quoting from Webster's, SCV defines "civic club" as "an association of persons for the promotion of the 'general welfare and betterment of life for the citizenry of a community or enhancement of its facilities; esp[ecially] devoted to improving health, education, safety, recreation, and morale of the general public through nonpolitical means.' " Under this definition, I am convinced that the SCV does not qualify as a civic organization.

The SCV's constitution reveals that the club's purpose is primarily historical and that the projects and causes it supports are limited to those which promote the Confederate heritage. Although promoting historical education has a civic component and while SCV involves itself in many laudable activities, its primary focus is advancing issues of peculiar interest to its members, not the general public. In this way, SCV is significantly at odds with the nationally recognized civic organizations enumerated in section 20-79.4(b)(5) of our General Statutes. Accordingly, I would hold that SCV is not a civic organization within the meaning of the statute and, thus, would vote to reverse the order of the trial court. However, I concur fully with the majority's holding reversing the award of attorneys fees to SCV.